THE VILLAGE OF UNION, Plaintiff-Appellee, *v.* SOUTHERN CALIFORNIA CHEMICAL COMPANY, Defendant-Appellant.

Second District   No. 76-403

Opinion filed April 18, 1978.

Michael C. Poper and W. Randall Baudin, both of Zukowski, Zukowski, Poper & Rogers, of Crystal Lake, for appellant.

Franks & Wylde, of Marengo, for appellee.

Mr. JUSTICE BOYLE delivered the opinion of the court:

The Village of Union, hereinafter plaintiff, filed a complaint on August 11, 1975, against the Southern California Chemical Company, hereinafter defendant, for the violation of its zoning ordinance, article III, section 11, I-1 District, on eight different dates during 1975. After a hearing, the trial court on May 3, 1976, found the defendant guilty of the emission of odors and gas on six of the dates—July 14, 21, 24, 25 and 31, 1975, and August 10, 1975. Defendant was fined $100 for each of these six separate violations of plaintiff's zoning ordinance and appeals from the entry of this order.

On appeal the defendant presents numerous issues for our perusal, but this court finds it necessary, in light of our disposition, to reach only one: Whether plaintiff's zoning ordinance properly can be utilized as a regulation of ambient air quality, separate and distinct from the requirements of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*) (hereinafter referred to as the Ill. E.P.A.). We hold that plaintiff's zoning ordinance improperly attempts to regulate air pollution matters which are governed statewide by the Ill. E.P.A., and we reverse defendant's conviction on each count of this ordinance.

A brief summary of the pertinent facts is necessary for an understanding of our holding. Defendant operates a factory which blends chemicals used in the etching industry. Various chemicals employed in the blending process are hydrochloric acid, ammonia chloride, and ammonia. At trial numerous witnesses testified concerning the nauseous odors and gases emanating from defendant's plant into the neighboring schoolyards and homes on the dates in question.

The purpose of the zoning ordinance in question is set forth in article I, section 1, of plaintiff's ordinance which provides that:

"In order that adequate light, pure air * * * and other dangers may be secured, * * *, and that the public health, safety, comfort, morals and welfare may otherwise be promoted, the following rules and regulations shall govern and be in force within the limits of the Village of Union, Illinois, regulating and limiting the use of any tract of land located within said village * * *."

The zoning ordinance which was violated by the defendant on the aforementioned dates permits in relevant part the following uses:

"2. Heavy manufacture or treatment of products or raw materials but not including glue or fertilizer factory, * * * or other uses deemed to be equally hazardous or detrimental to nearby property or having the same adverse effect upon the public health, safety or general welfare by reason of the emission of odors, dust, gas, smoke or waste material, but not on account of vibration or noise."

Defendant contends on appeal that plaintiff's zoning ordinance is in fact an ordinance regulating air pollution, which is a matter of statewide concern and over which a local governmental unit's authority has been preempted by the Ill. E.P.A. Plaintiff, in rebuttal, contends that its zoning ordinance operates under a specific grant of power from the State legislature which is not preempted by the Ill. E.P.A. and, further, that there is no evidence in the record that the regulated matter (odors and gas) was of statewide concern.

The problem presented herein is one with which the advent of the Ill. E.P.A. in 1970 has been reoccurring and which is not subject to any legalistic syllogisms. Understandably, each local municipality would like to control the odoriferous substances which occur within the confines of its jurisdiction, whether the pollution be in the form of air, water, landfill or other matters. However, local control over such questions has been preempted under the Ill. E.P.A., the purpose of which has been clearly stated by our legislature to be

"* * * to establish a unified, state-wide program supplemented by private remedies, to restore, protect and enhance the quality of the environment, and to assure that adverse effects upon the environment are fully considered and borne by those who cause them." (Ill. Rev. Stat. 1975, ch. 111½, par. 1002(b).)

The legislature further declared "that because environmental damage does not respect political boundaries, it is necessary to establish a unified state-wide program for environmental protection * * *" (Ill. Rev. Stat. 1975, ch. 111½, par. 1002(a)(ii)) and "that air, water, and other resource pollution, public water supply, solid waste disposal, noise, and other environmental problems are closely interrelated and must be dealt with as a unified whole in order to safeguard the environment" (Ill. Rev. Stat. 1975, ch. 111½, par. 1002(a)(iii)).

Defendant places principal reliance on recent decisions of our supreme court where this question of preemption of environmental matters by the Ill. E.P.A. in contravention of local municipalities has arisen and which have uniformly held that local governmental bodies may not regulate under their home-rule or non-home-rule powers environmental interests or matters of statewide concern. Cognitive examples of the supreme court's position on these environmental matters of statewide concern are cogently stated in *City of Des Plaines v. Chicago & North Western Ry. Co.* (1976), 65 Ill. 2d 1, 357 N.E.2d 433; *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, 343 N.E.2d 493; and *O'Connor v. City of Rockford* (1972), 52 Ill. 2d 360, 288 N.E.2d 432. It would unduly prolong this opinion to set forth the complete dissertations involved therein which, as Justice Goldenhersh aptly noted, arise "from apparently antipodal legislative grants of authority" to local municipalities and the State. (*O'Connor v. City of Rockford* (1972), 52 Ill. 2d 360, 364, 288 N.E.2d 432, 434.) However, it would be instructive to note briefly the environmental situations which the supreme court has found to be matters of statewide concern. In *City of Des Plaines v. Chicago & North Western Ry. Co.* (1976), 65 Ill. 2d 1, the court held that a local ordinance which regulated noise pollution emissions was an attempt to regulate an environmental matter of statewide concern and was not within the constitutional home-rule power of the city of Des Plaines. In *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, the court found that the village's ordinance which attempted to regulate a sanitary landfill within its boundaries was invalid and had been preempted by the Ill. E.P.A. and that the village could not interfere or frustrate the objectives of the Ill. E.P.A.'s established uniform statewide system of environmental protection where the Ill. E.P.A. had already granted the plaintiff a permit for its operation. In *O'Connor v. City of Rockford* (1972), 52 Ill. 2d 360, the court also held that a city or county could not regulate the use of a landfill by its zoning ordinance since it was clearly the intent of the legislature that such operations were of a statewide concern and could be operated only upon the issuance of a permit from the Illinois Environmental Protection Agency.

Under the above rationale of *City of Des Plaines, Carlson* and *O'Connor*, we conclusively find that section 11, I-1 District, of plaintiff's zoning ordinance is an attempt to regulate an environmental matter of

statewide concern, specifically air pollution. Although plaintiff's ordinance reputes to regulate zoning within the confines of its own village, the net effect of the ordinance is to determine whether the quality of air emitting from plaintiff's plant is detrimental to the public health, safety and welfare both within and outside the legal corporate boundaries of the village—which clearly constitutes a matter of statewide concern and which can be properly legislated only by the Ill. E.P.A. Certainly plaintiff has the authority to enact zoning ordinances under the avowed statutory purpose of providing pure air for its residents in specific *areas* of its village, such as residential or industrial parks, etc. But this power does not preempt the statutory mandate of the Ill. E.P.A. to circumscribe the particular guidelines for what constitutes air pollution and to enforce these regulations on a statewide basis. In this regard, the oft-cited statement of the General Government Committee is apropos at this juncture wherein the Committee stated that:

"There are myriad problems which must be overcome in this effort to preserve our environment. Not least among them is the problem of duplication of efforts. It is essential to the cause that inter and intra governmental efforts complement one another, that there be a coordinated plan of action with uniform standards." 6 Record of Proceedings, Sixth Illinois Constitutional Convention 700.

Plaintiff attempts to distinguish *City of Des Plaines, Carlson* and *O'Connor* on two bases: first, on the grounds that none of the above cases dealt with air pollution and, second, that there was no evidence in the record that the ammonia odors and gases spread beyond the village's boundaries. We agree with plaintiff that our supreme court has not specifically dealt with the problem of the concurrent jurisdiction of local governmental bodies and the Illinois Environmental Protection Agency over air pollution concerns. However, the sound tenets expressed by the court in its resolution of this jurisdictional environmental question in regard to landfill and noise pollution in *City of Des Plaines, Carlson* and *O'Connor* are similarly applicable to air pollution matters. Likewise, there need be no direct evidence that the emissions involved extended beyond the village boundaries because our legislature had previously determined that the enactment of the Illinois Environmental Protection Act was necessary "to establish a unified state-wide program for environmental protection" "* * *" because environmental damage does not respect political boundaries." (Ill. Rev. Stat. 1975, ch. 111½, par. 1002(a)(ii).) As our supreme court noted in *City of Des Plaines* in determining that noise pollution was a matter necessitating regional if not statewide standards or control, "air or water pollution * * * may emanate from a small, local source and then travel outward to foul an entire area or region." (65 Ill. 2d 1, 5.) Similarly, the air pollution emitting from defendant's plant in the

form of ammonia and other noxious gases does not respect political boundaries and is, at the least, a matter of regional concern as well as a matter of statewide concern. (65 Ill. 2d 1.) Finally, we have reviewed plaintiff's remaining contentions—that the specific provisions of section 11—13—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—13—1) must prevail over the specific provisions of the Ill. E.P.A. and that "pure air" is the only subject which is covered under both the Ill. E.P.A. and the zoning ordinance of section 11—13—1 and is thus a proper object of zoning. We find these contentions to be entirely without merit. It is sufficient to note that the Ill. E.P.A. is abundantly more *specific* concerning air pollution than section 11—13—1, and that while "pure air" may well be a proper subject of zoning for local municipalities, air pollution is not all-inclusive with this authority. As our supreme court so succinctly remarked in *Carlson v. Village of Worth* (1976), 62 Ill. 2d 406, 418, 343 N.E.2d 493, 500:

> " 'It is clear from the Environmental Protection Act itself, its legislative history, and preceding legislation in the same area that the General Assembly intended to thereby exclude any authority of local political entities which could interfere with or frustrate the objective of establishing a unified state-wide system of environmental protection.' 25 Ill. App. 3d at 322."

Herein it is readily apparent that plaintiff's ordinance does, indeed, interfere with an environmental matter of statewide concern—air pollution—a legislative priority which is exclusively within the jurisdiction of the Illinois Environmental Protection Act and thus is an invalid assertion of authority by a local municipality. Accordingly, defendant's conviction and the resultant fines under this ordinance on the six dates in question must be reversed.

The judgment of the circuit court of McHenry County is reversed.

Judgment reversed.

SEIDENFELD, P. J., and RECHENMACHER, J., concur.